UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DANIEL CARDENAS PARRA,                )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   No. 2:26-cv-00169-JRO-MKK
                                      )
SAMUEL OLSON,                         )
MARKWAYNE MULLIN,                     )
BRISON SWEARINGEN, and                )
PAMELA BONDI,                         )
                                      )
            Defendants.               )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The issue in this case is whether the Petitioner, Daniel Cardenas Parra, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A), and his detention does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. [1].

**I.**

**BACKGROUND**

**A.     Factual Background**

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence. *See* 28

U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Mexico. Dkt. 1 at 6; Dkt. 6-1 at 1. In 1995, he entered the United States without inspection and continued to reside in the United States without lawful immigration status. Dkt. 1 at 3, 6. Years later, on March 10, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers encountered Petitioner during an operation targeting another individual. Dkt. 6 at 2; Dkt. 6-1 at 2. After a records check revealed Petitioner had no lawful status in the United States, ICE officers took him into custody. Dkt 6-1 at 2. The Department of Homeland Security also initiated removal proceedings by issuing him a Notice to Appear the same day. Dkt 6 at 2; Dkt 6-1 at 5.

ICE detained Petitioner without bond pending his removal proceedings based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). Dkt. 6 at 2; Dkt. 6-1 at 2, 4. Petitioner is currently detained at the Clay County Justice Center in Brazil, Indiana, dkt. 1 at 4, and his removal proceedings are ongoing, dkt. 6 at 2–3.

Petitioner filed the instant habeas action on March 17, 2026. Dkt. 1. He names as Respondents Brison Swearingen, Head of the Clay County Justice

Center; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Samuel Olson, Director of the ICE Field Office for Enforcement and Removal Operations in Chicago; the United States Department of Homeland Security; the Executive Office for Immigration Review; and Pamela Bondi, United States Attorney General.  Dkt. 1 at 6–7.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) generally requires the detention and expedited removal of "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation.   8 U.S.C. § 1225(b)(1).  Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.   With exceptions not relevant here, Section

3

1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).  In other words, detention is mandatory pending removal proceedings.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.

## DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission."  Petitioner claims that Section 1226(a) governs his detention and entitles him to a bond hearing.  He further argues that his detention without a bond hearing violates the Central

4

District of California's declaratory judgment order in *Maldonado Bautista v. Noem*, No. 5:25-cv-1873 (C.D. Cal. Dec. 18, 2025), as well as his due process rights under the Fifth Amendment.[1]

The Court agrees with Respondents that the plain meaning of Section 1225(b)(2)(A) requires Petitioner's detention without bond pending his removal proceedings. Moreover, Petitioner's detention pending removal proceedings does not violate the *Maldonado Bautista* declaratory judgment—which currently applies only to aliens in the Central District of California—or due process.

## A.    Section 1225 Applies to Petitioner

Section 1225's plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has

---

[1] In his petition and reply brief, Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 5; Dkt. 7 at 2–3. Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 6, 9, so the Court does not address the issue.

not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader. "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission."). There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted. He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287. No party argues that the former applies in this case. Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country. Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1.    "Seeking Admission"

First, Petitioner suggests that Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry at the country's borders and ports of entry.  Dkt. 1 at 4; Dkt. 7 at 3–4.

The Seventh Circuit—in dicta and an emergency stay posture on a non-habeas matter—has preliminarily agreed with Petitioner's reading.  *See Castanon v. U.S. Dep't Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025).  So too have other judges within this District.  *See, e.g.*, *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). While these decisions warrant serious consideration, they are not binding upon this Court.  The Seventh Circuit has emphasized that decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record."  *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).  And "district court opinions lack precedential force

even vis-à-vis other judges in the same judicial district." *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted).

Respectfully, this Court reads Section 1225(b)(2)(A) differently, in line with the only appellate courts to date to have addressed the precise issue on the merits in a habeas action—*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, --- F.4th ---, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026)—as well as other district court judges within the Seventh Circuit.[2]

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026); *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*,

---

[2] *Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

2026 WL 819258, at *3 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A).  Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission."  *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous).  This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States.  *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived.  Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers."  The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'"  *Buenrostro-Mendez*, 166 F.4th at 503; *see also Avila*, 2026 WL 819258, at *3 n.4.  Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United

9

States . . . ." (emphasis added). Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission." In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225. It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect. For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation. *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States. But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner never effected a *lawful* entry into the country. He was not admitted. In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission." This is not a

10

novel or even recent understanding of our immigration laws.  In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . .  The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original).  Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2.    "Arriving Aliens"

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 applies only to "aliens arriving in the United States."  Dkt. 7 at 4 (citation omitted).  Petitioner, by contrast, has been in the country for over 30 years.  *Accord Mohammed v. Olson*, No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words.  *See Kloeckner v. Solis*, 568 U.S. 41,

55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers. *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*. That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)). *Accord Buenrostro-Mendez*, 166 F.4th at 505; *Avila*, 2026 WL 819258, at *5.

Granted, it is beyond question that Section 1225 applies to "arriving aliens." Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived. Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

### 3.    1225 Versus 1226

Third, Petitioner argues that Section 1226(a), not Section 1225(b)(2)(A), applies to aliens charged as being inadmissible, including those who "previously

entered the country [without inspection] and have been residing in the United States." Dkt. 1 at 7. This Court also rejected this argument in a previous Order. *Demir*, 2026 WL 706485, at \*5–6. Petitioner's argument incorrectly presumes that Sections 1225 and 1226 are mutually exclusive. Other courts in this District have made this presumption explicit by holding that once the Government has already invoked its authority under Section 1226(a) by arresting an alien pursuant to an I-200 warrant, the Government is limited to the process described in Section 1226 and is barred from relying upon Section 1225. *See, e.g.*, *Mohammed*, 2025 WL 3541819, at \*3 ("[T]he Government has affirmatively decided to treat' the Petitioner 'as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." (quoting *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at \*6 (N.D. Ill. Oct. 24, 2025)).

But, respectfully, nothing in the plain text of Sections 1225 and 1226 suggests that the mandates and procedures in these sections are mutually exclusive. They merely overlap. *See Buenrostro-Mendez*, 166 F.4th at 505–06; *Avila*, 2026 WL 819258, at \*5. First, much of Section 1226 applies expressly to *admitted* aliens who may be arrested, detained, and removed for various reasons, such as committing certain criminal acts. *E.g.*, 8 U.S.C. §§ 1226(c)(1)(B), (C) (referring to 8 U.S.C. § 1227(a)(2)). When an arrestee is an admitted alien, Section 1226's bond provision clearly applies. But this does not necessarily imply that the bond provision must also apply when an arrestee is an *unadmitted* alien who falls squarely within the plain meaning of Section 1225(b)(2)(A)'s

13

mandatory detention provision.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 ("Section [1226] does not purport to overrule the mandatory detention requirements . . . in section [1225](b)(1) and (2).").

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes— like the INA—that are often interspersed with "specific solutions" to "specific problems."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.  To eliminate the contradiction, the specific provision is construed as an exception to the general one."  *RadLAX Gateway Hotel*, 566 U.S. at 645.  "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one."  *Id.*  Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A).  The specific is the exception to the general, and it applies to Petitioner in this case.  *Accord Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613, at *7 (N.D. Ill. Jan. 8, 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226, as explained above. Further, Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Government is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner, as he suggests. Dkt. 7 at 4. Rather, it harmonizes the two provisions. At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

### 4.   Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is "inconsistent with decades of prior statutory interpretation and practice." Dkt. 7 at 4 (citation

omitted).  However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice.  And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. 141, 162 (1841) (Story, J.)).  Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel.  *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

* * *

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not.  As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity."  *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 2026 WL 819258, at *4; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully").  Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

16

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner expressly argues this point. Dkt. 7 at 3. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).

**B.**    ***Maldonado Bautista* order**

Next, Petitioner argues that his detention without bond pending removal proceedings violates the Central District of California's declaratory judgment order in *Maldonado Bautista v. Noem*, No. 5:25-cv-1873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Dkt. 1 at 2. On November 25, 2025, the district court in *Maldonado Baustista* certified a nationwide "bond eligible" class, which it defined as:

17

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). Thereafter, on December 18, 2025, the district court declared that "bond eligible" class members "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista*, 2025 WL 3678485, at *1.

On March 6, 2026, however, the United States Court of Appeals for the Ninth Circuit administratively stayed the *Maldonado Bautista* declaratory judgment order "pending a ruling on the government's emergency motion for a stay pending appeal, <u>insofar as the district court's judgment extends beyond the Central District of California</u>." *Bautista v. U.S. Dep't Homeland Sec.*, Case No. 26-1044, Dkt. 5 (9th Cir. Mar. 6, 2026) (emphasis added). That administrative stay remains in place, so Petitioner's detention under Section 1225(b)(2)(A) does not violate the *Maldonado Bautista* declaratory judgment.

In any event, the Court observes that the Supreme Court's recent decision in *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), may "forbid [it] to grant [Petitioner] relief based on *Maldonado Bautista's* declaratory judgment." *Bazurto v. Olson*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, at *2 n.1 (S.D. Ind. Feb. 3, 2026) (explaining that the Supreme Court in *J.G.G.* "vacated a preliminary

18

injunction barring the removal of a provisionally certified class of aliens and held that class members must pursue any relief in habeas actions in the districts where they were confined" (citing *J.G.G.*, 604 U.S. at 673–74); *see also Gonzalez v. Maples*, No. 4:26-cv-00022-TWP-KMB, 2026 WL 413373, at *1 n.2 (S.D. Ind. Feb. 13, 2026) (same). Petitioner essentially concedes as much. Dkt. 7 at 6 (citing *J.G.G.* and stating "this Court may not [be] bound by the *Bautista Maldonado* case"). Given the Ninth Circuit's administrative stay, however, the Court need not decide the question of *Maldonado Bautista*'s enforceability today.

## C.    Due Process

Finally, Petitioner argues his detention without bond pending removal proceedings violates his due process rights under the Fifth Amendment. His petition devotes one sentence to the claim. Dkt. 1 at 4 ("Additionally, detainment without a proper hearing afforded under 8 C.F.R. 1236.1(c)(8), (d)(1) violates the Due Process Clause."). The reply brief does not offer much more. Without citing any case law, Petitioner argues his "continued detention is unreasonable" and "stands against due process" because it is "a governmental effort to fatigue [him] to the point [he] abandon[s] legally protected rights." Dkt. 7 at 4–5.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). That holding settles the issue. And this Court reached the same conclusion in a

19

previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

What's more, Petitioner has been detained for less than a month. Even in a case where removal was "no longer practically attainable," the Supreme Court held detention for up to six months was presumptively constitutional. *Zadvydas v. Davis*, 533 U.S. 678, 690, 701 (2001). Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

**III.**

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Petitioner Daniel Cardenas Parra's Petition for Writ of Habeas Corpus and **DISMISSES** this case with prejudice. Dkt. [1]. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 3/30/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email